GIBERSON *v.* BURROUGHS.

1. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—WRITTEN POWER OF ATTORNEY.

> Where, under her lease, the lessee of an apartment house was obligated to keep the plumbing in repair, a written power of attorney given by her to her agent "to do and perform all and everything whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present," *held*, to include authority to have needed plumbing repairs made.

2. APPEAL AND ERROR—APPELLANT MAY NOT COMPLAIN OF INSTRUCTIONS TOO FAVORABLE.

> Where, in an action by a plumber for the cost of plumbing repairs to defendant's building ordered by her agent, defendant's denial of authority in her agent to order said repairs was refuted by a written power of attorney and the court might well have instructed the jury that the agency was established, defendant was not harmed by an instruction leaving the question of agency to the jury.

Error to Wayne; Goff (John H.), J.    Submitted June 13, 1923.    (Docket No. 91.)    Decided July 19, 1923.

Assumpsit by Edward P. Giberson and others, copartners as Otto A. Wurm & Company, against Florence L. Burroughs for services rendered.    Judgment for plaintiffs.    Defendant brings error.    Affirmed.

*Robert M. Brownson* (*Stephen V. Riffel,* of counsel), for appellant.

*Felix A. Doetsch,* for appellees.

WIEST, C. J.    Defendant held the lease of a 36-apartment house on Bagg street in the city of Detroit and was under obligation to keep the premises and all fixtures and equipment thereof, including plumbing, in repair.    In the fall of 1919, she made up her mind to spend the winter in Florida and entered into an agreement with Edward J. Tate to act as her agent in the management of the apartment house during her absence, and for his compensation he was to receive one-half of the net income from the rentals. She left Detroit for Florida, November 15, 1919, returned to Detroit, December 1, 1919, and left for Florida again December 18, 1919, and remained there until about March 1, 1920, when she returned to Detroit, and about June 1, 1920, resumed management of the apartment house.    On December 18, 1919, in addition to the agreement with Mr. Tate to manage the apartment house, she gave him a general power of attorney:

"To enter into and take possession of all the lands, tenements, hereditaments, and premises whatsoever, in the said county of Wayne situated, to or in which I am or may be in any way entitled or interested, or in which I may become entitled or interested; and to grant, bargain and sell, mortgage and lease the same, or any part or parcel thereof, for such sum or price, and on such terms as he shall think advisable, and for my benefit, and for me and in my name to make, execute and deliver, good and sufficient leases, mortgages and deeds of conveyance for the same, with the usual covenants and warranty, and to ask, demand, distrain for and recover and receive all moneys or sums of money which shall become due or owing to me by means of any such bargain and sale, mortgage or lease.    Giving and granting unto my said attorney full power and authority to do and perform all and everything whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present with full power of substitution and revoca-

tion, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof."

Soon after defendant left for Florida, the second time, the sewer of the apartment house became stopped and flooded the basement, and some one called plaintiffs by telephone to come and see to it.

A representative of plaintiffs visited the apartment house and set men at work to repair the sewer, and finding it would be quite an extensive job took the matter up with Mr. Tate, told him what was being done and what had to be done to get the sewer cleaned out, and Mr. Tate thanked him for the service being given and expressed the hope that it would be cleaned out soon as it was very disagreeable in the building. Thereupon plaintiffs went ahead with the work. The charge for this work and material used therein amounted to $604.43. Plaintiffs also performed some plumbing work at the request of defendant before she left and other plumbing work, outside of the sewer, after she left, their whole bill amounting to the sum of $1,351.34. At the end of the work plaintiffs presented their bill to Mr. Tate, who paid $50 on it and stated he would be in position soon to make a substantial payment. No further payments being made plaintiffs brought this suit to recover for their services. Defendant admitted liability for work done at her personal request, claimed credit for the $50 paid by Mr. Tate, confessed there was due plaintiffs the sum of $24.21, and asked the court to direct the jury to find a verdict in favor of plaintiffs for that amount, which the court refused to do. Defendant denied authority on the part of Mr. Tate to employ plaintiffs and also denied their employment by him. No question was raised about the need of the work done or the reasonableness of the charges. Defendant claimed by motion to direct a verdict, by motion

for a new trial, and now urges by assignments of error, "that there was no testimony of any holding out by her of Edward J. Tate as her agent, clothed with authority to make purchases or contract debts and pledge her credit to pay therefor," and insists the court was in error in charging the jury as follows:

"If you find in this case the defendant was lessee of the Virginia Apartments and Edward J. Tate was her agent, as manager of the same, at the time when plaintiff is claiming to have made the repairs and rendered the services sued for in this case, and if you find such repairs were made and such services were rendered, either on the express order of said agent or with his knowledge and consent, and that Tate, the claimed agent, accepted the benefit of such services, as such manager, and that Tate was clothed with apparent authority so to do, then I charge you that the defendant is liable to the plaintiff in the same manner and to the same extent as if she had been personally present and acting instead of through such agent.    In such case as that if you find all those facts, the plaintiffs are entitled to your verdict."

It would be hard to conceive of a more comprehensive delegation of authority to manage property, inclusive of the duty to keep the same in repair, than here established.    Under the evidence the case might well have been submitted to the jury under the instruction of agency to keep the premises in repair fully established.    This being true defendant was not harmed by the instruction complained of.    It must be held, under the undisputed evidence, that Mr. Tate was defendant's agent to manage the apartment house during her absence, and with authority to keep the premises in repair.    If repairs were made with his knowledge and acquiescence, defendant, as beneficiary thereof, is as much bound thereby as though present and acquiescing therein herself.    Defendant empowered Mr. Tate to act for her in the management of the apartment house and constituted him her at-

torney in fact over all her property in Wayne county, and she cannot now be heard to say that her agreement and power of attorney reserved to her supervision over the matter of needed repairs during her absence.     Mr. Tate would have been remiss in his duty toward defendant had he neglected repair of the stopped sewer and left the other work undone.

It is of little importance that plaintiffs could not tell who called them by telephone to fix the sewer, for Mr. Tate was soon informed they were at work thereon and approved of their making the repairs and, when presented, with the account in suit, paid $50 thereon, and promised a larger payment in the near future, and even defendant insists that she be credited with such payment, but not upon the repairs made during her absence.     Mr. Tate was defendant's agent and as such he did not have to act as a servant and seek instruction as needs for repairs arose.     Under the evidence there was really no defense and we need not indulge in an academic discussion of the principles of agency.

The judgment is affirmed. with costs to plaintiffs.

FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.